UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BAHAA S. KALASHO

      Plaintiff,                    CIVIL ACTION NO. 04-CV-70859-DT

vs.                          DISTRICT JUDGE DENISE PAGE HOOD

                                    MAGISTRATE JUDGE DONALD A. SCHEER

PATRICIA CARUSO, et. al.,

      Defendants,
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

RECOMMENDATION: Defendants' Motion for Summary Judgment should be granted, and that of Plaintiff denied, as Plaintiff has shown no intentional interference with his constitutional rights by the handling of his legal mail.

\* \* \*

Plaintiff, while a prisoner at the Standish Maximum Correctional Facility (SMF), in Standish, Michigan filed the instant Complaint, pursuant to 42 U.S.C. § 1983, on March 8, 2004, against Defendant Caruso, the Director of the Michigan Department of Corrections (MDOC), and nine other MDOC employees. Plaintiff alleges that Defendants have violated his federal constitutional rights since October 2001, by opening his "legal mail" outside his presence, after he had filed a written request to have such mail opened only in his presence. Plaintiff also alleges that his personal mail from family and friends has been opened outside his presence since March 2003, without a legitimate penological or

government interest. Plaintiff does not allege that any of the mail was actually read by prison employees, only that it was delivered to him already opened. Claiming that his constitutional rights have been violated, Plaintiff seeks declaratory relief and punitive damages only.

Defendants filed a Motion to Dismiss or for Summary Judgment on June 3, 2004, based upon a failure to state a claim upon which relief can be granted. Defendants argued that Plaintiff had failed to establish a constitutional violation and that, even if he had, they were protected from suit by qualified immunity.

In an Order dated March 31, 2005, the Court issued a partial judgment on Defendants' Motion for Summary Judgment. The Court dismissed Defendants Hofbauer and Nomellini with prejudice, and further ordered that all personal mail claims against Defendants Caruso, Birkett, Lockwood, McNamara, Willliamson, Forshee, Berry and Brethauer be dismissed as well. The Court also dismissed Plaintiff's claims as to legal mail received from courts and/or the Judicial Tenure Commission prior to September 18, 2003.

The case was allowed to proceed on the issues of whether Defendants improperly interfered with legal mail sent to Plaintiff
by his attorney, and legal mail sent by the courts and Judicial Tenure Commission after September 18, 2003. The Court also allowed claims concerning the interference with legal mail from the Prison Legal Services of Michigan and the Attorney General's Office to proceed, but provided that there be a period of discovery to ascertain the facts surrounding any interference with such mail.

Following the period of discovery, Defendants filed a renewed Motion for Summary Judgment on September 9, 2005, asserting that Plaintiff failed to state a claim

upon which relief can be granted. Defendants argue that Plaintiff's equitable claims are moot in light of the newly enacted MDOC policy directive (PD 05.03.118) requiring legal mail to be opened and inspected in the presence of any prisoner requesting special handling[1]. Defendants also maintain that Plaintiff has failed to come forward with sufficient evidence to satisfy the relevant legal standard for an award of punitive damages[2].

Plaintiff filed a counter Motion for Summary Judgment on September 15, 2005, apparently dropping all claims concerning the interference with legal mail from the Prison Legal Services of Michigan and the Attorney General's Office. Plaintiff maintains, however, that he is entitled to punitive damages against Defendants Birkett, Forshee, Berry and Brethauer. By their opening of his legal mail outside his presence, Plaintiff claims that these defendants caused him undue hardship and malicious aggravation (See pp 4-5 of Counter Motion for Summary Judgment at Docket #41). In a Response to Plaintiff's Motion for Summary Judgment, dated September 27, 2005, Defendants assert that Plaintiff is not entitled to damages because he has failed to show specific, personal wrongdoing on the part of each individual defendant. (Docket #42). In a counter-response dated October 3, 2005, Plaintiff essentially reiterated the allegations found in his complaint (Docket #43).

**STANDARD OF REVIEW**

When considering a Rule 12(b)(6) motion to dismiss, the trial court must accept all the allegations in the complaint as true and construe the complaint liberally in

---

[1] This policy directive was approved on May 3, 2005, and became effective on June 6, 2005.

[2] Plaintiff only sought injunctive relief and punitive damages for interference of legal mail (See Verified Complaint at pp. 17).

favor of the plaintiff.  FED. R. CIV. P. 12(b)(6); see Miller v. Currie, 50 F.3d 373, 377 (6th Cir. 1995).  "Dismissal of a complaint for the failure to state a claim upon which relief may be granted is appropriate only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."  Brown v. Bargery, 207 F.3d 863, 867 (6th Cir. 1997).

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56©.  The moving party has the burden of showing an absence of evidence to support the non-moving party's case.  Covington v. Knox County Sch. Sys., 205 F.3d 912, 914 (6th Cir. 2000).  Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial.  Id.  A mere scintilla of evidence is insufficient to defeat a supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  While the evidence itself need not be the sort admissible at trial, the evidence must be more than the non-movant's own pleadings and affidavits.  Ashbook v. Block, 917 F.2d 918, 921 (6th Cir. 1990); see also Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989) (explaining that the non-moving party may not rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact).

**INTERFERENCE WITH INCOMING MAIL**

A prisoner's right to receive mail is protected by the First Amendment, but prison officials may impose restrictions that are reasonably related to security or other legitimate penological objectives. See Knop v. Johnson, 977 F.2d 996, 1012 (6th Cir. 1992). As the Sixth Circuit has noted, "prison officials may open prisoners' incoming mail pursuant to a uniform and evenly applied policy with an eye to maintaining prison security." Lavado v. Keohane, 992 F.2d 601, 607 (6th Cir. 1993). However, prison officials who open and read incoming mail in an arbitrary and capricious fashion violate a prisoner's First Amendment rights. See Parrish v. Johnson, 800 F.2d 600, 604 (6th Cir. 1986).

When the incoming mail is "legal mail," courts have heightened concerns with allowing prison officials unfettered discretion to open and read an inmate's mail.  A prison's security needs do not automatically trump a prisoner's First Amendment right to receive mail, especially correspondence that impacts upon or has import for the prisoner's legal rights, the attorney-client privilege, or the right of access to the courts. See Kensu v. Haigh, 87 F.3d 172, 174 (6th Cir. 1996) ("The right of a prisoner to receive materials of a legal nature, which have impact upon or import with respect to that prisoner's legal rights and/or matters, is a basic right recognized and afforded protection by the courts ...."); see also Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003) ("In balancing the competing interests implicated in restrictions on prison mail, courts have consistently afforded greater protection to legal mail than to non-legal mail....").

In an attempt to accommodate both the prison's needs and the prisoner's rights, courts have approved prison policies that allow prison officials to open "legal mail" and inspect it for contraband in the presence of the prisoner. See, e.g., Wolff v. McDonnell,

418 U.S. 539, 577 (1974) (upholding such a policy against a Sixth Amendment attorney-client privilege claim and a Fourteenth Amendment due process claim based on access to the courts). In Knop, the Sixth Circuit addressed an opt-in system in which prison officials could open any mail sent to a prisoner unless the prisoner affirmatively requested that "privileged mail," defined by the policy as mail sent by a court or by counsel, be opened in his presence. Knop v. Johnson, 977 F.2d at 1012.  The court found that the opt-in system was constitutionally sound as long as prisoners received written notice of the policy, did not have to renew the request upon transfer to another facility, and were not required to designate particular attorneys as their counsel. Id.

However, not all mail that a prisoner receives from a legal source will implicate constitutionally protected legal mail rights. In Sallier v. Brooks, 343 F.3d 868 (6th Cir. 2003), the court found that mail from legal sources having little or nothing to do with safeguarding a prisoner's access to the courts, or protecting an inmate's relationship with an attorney, could be opened outside the presence of a prisoner. The Sallier court specifically ruled, for instance, that mail from county clerks, registrars of deeds or bar associations were not entitled to special handling by prison officials because such correspondence generally did not contain confidential, personal or privileged material. Id. at 876. The Sallier court emphasized that the only mail that qualified as "legal mail", entitling it to First Amendment protection, was correspondence sent by courts or attorneys at law. Id. at 877-878. (We find that the prisoner's interest in unimpaired, confidential communication with an attorney is an integral component of the judicial process and, therefore, that as a matter of law, mail from an attorney implicates a prisoner's protected legal mail rights).

DISCUSSION AND ANALYSIS

EQUITABLE RELIEF

As pointed out by Defendants, Plaintiff acknowledged in his deposition that, based on the recently enacted policy directive requiring legal mail to be opened and inspected in the presence of the prisoner requesting special handling, his claims for equitable relief were now moot (See Exhibit 2, p. 17 attached to Defendants' Motion for Summary Judgment at Docket #40).

PUNITIVE DAMAGES

In his Motion for Summary Judgment, Plaintiff asserted that punitive damages were warranted against Defendants Birkett, Forshee, Berry, Brethhauer and Jane Doe #2.[3] Punitive damages may be awarded in a § 1983 action, but only "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected right of others." Smith v. Wade, 461 U.S. 30, 56 (1983). Plaintiff has failed to demonstrate that any of the remaining defendants were motivated by an evil motive or intent, or that they acted with reckless or callous indifference.

---

[3]Plaintiff also claimed that a Jane Doe #2 violated his constitutional rights (See p. 4 of Plaintiff's Motion for Summary Judgment). In general, the use of unnamed defendants is not favored in the federal courts. See Colle v. Brazos County, Tex., 981 F.2d 237, 243 (5th Cir.1993). The mere naming of a person by use of a fictitious title does not make that person a party to a lawsuit, and it does not prevent the entry of final judgment. Nagle v. Lee, 807 F.2d 435, 440 (5th Cir.1987); Haddad v. Fromson, 154 F.Supp. 2d 1085, 1093 (W.D. Mich 2001). An appropriate disposition of the claims against the unnamed defendants is an order dismissing them without prejudice, so that Plaintiff's ability to bring an action within the limitations period is preserved, should he later learn their identities. See Brown v. Our Lady of Lourdes Med. Ctr., 767 F.Supp. 618, 621 (D.N.J. 1991), *aff'd*, 961 F.2d 207 (3d Cir.1992).

Prison policy directives provide prisoners with the right to carry on confidential correspondence only with attorneys, the courts, or legal assistance organizations. As mentioned above, these regulations do not include restrictions on opening mail either to or from a prisoner's family or friends.[4] Given the September 11, 2001, terrorist attack and the anthrax mail threats, the unauthorized opening of Plaintiff's legal mail by prison officials after September 2003, appears reasonably related to legitimate penological objectives and not by any evil motive. Plaintiff argues that the purpose of awarding punitive damages is not to compensate him, but rather to punish Defendants in order to deter them from committing similar acts in the future. Smith v. Wade, 461 U.S. at 54. Plaintiff has failed to establish, however, why it is necessary to punish Defendants, who were merely following MDOC policy regarding prisoners legal mail. Because the MDOC policy has been revised, there is no need to award punitive damages to deter prevent similar future conduct.

LACK OF PERSONAL INVOLVEMENT

Even if Plaintiff could prove that the defendants were somehow motivated by an evil motive or intent, the complaint should still be dismissed for failure to allege any personal involvement by any of the named defendants. In order to state a claim for monetary damages under § 1983, the Plaintiff must allege some specific, personal wrongdoing on the part of each individual defendant, and theories of vicarious liability or respondeat superior are not sufficient. Rizzo v. Goode, 423 U.S. 362, 376 (1976).

---

[4] In Parrish v. Johnson, 800 F.2d 600, 603 (6th Cir.1986), the court held that prison officials may place reasonable restrictions upon the right of a prisoner to receive mail. Mail can be opened, and even read, pursuant to a uniform and evenly applied policy as long as the restrictions are reasonable. Id. at 603-04. The burden is on prison officials to put forth legitimate reasons for interfering with a prisoner's incoming mail. Id. at 604.

**8**

Moreover, without a more definite statement of personal involvement by the individually named prison officials, it is impossible for this court to determine whether any of them opened mail entitled to the constitutional protections accorded a prisoner's "legal mail".

Having neither suffered nor alleged a remediable harm by any of the named defendants, Plaintiff has failed to allege a compensable constitutional violation. Accordingly, I am persuaded that the Defendants' Motion to Dismiss or for Summary Judgment should be granted, that of Plaintiff denied, and the instant Complaint be dismissed.

The parties are advised that any objections to this Report and Recommendation must be filed with the Court within ten (10) days after they are served with a copy, or further appeal from Judge Hood's acceptance thereof is waived.

s/Donald A. Scheer
DONALD A. SCHEER
UNITED STATES MAGISTRATE JUDGE

DATED: October 24, 2005

_____

### CERTIFICATE OF SERVICE

I hereby certify on October 24, 2005 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on October 24, 2005.  **None.**

s/Michael E. Lang
Deputy Clerk to
Magistrate Judge Donald A. Scheer
(313) 234-5217