UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BAHAA S. KALASHO

        Plaintiff,        CIVIL ACTION NO. 04-CV-70859-DT

  vs.        DISTRICT JUDGE DENISE PAGE HOOD
        MAGISTRATE JUDGE DONALD A. SCHEER

PATRICIA CARUSO, et. al.,

        Defendants,
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

RECOMMENDATION: Defendants' Motion for Summary Judgment should be granted as Plaintiff has shown no compensable interference with his constitutional rights by the handling of his legal mail.

\*   \*   \*

Plaintiff, while a prisoner at the Standish Maximum Correctional Facility (SMF), in Standish, Michigan filed the instant Complaint, pursuant to 42 U.S.C. § 1983, on March 8, 2004, against Defendant Caruso, the Director of the Michigan Department of Corrections (MDOC), and nine other MDOC employees. Plaintiff alleges that Defendants have violated his federal constitutional rights since October 2001, by opening his "legal mail" outside his presence, after he had filed a written request to have such mail opened only in his presence. Plaintiff also alleges that his personal mail from family and friends has been opened outside his presence since March 2003, without a legitimate penological or government interest. Plaintiff does not allege that any of the mail was actually read by prison employees, only that it was delivered to him already opened. Claiming that his

constitutional rights have been violated, Plaintiff sought declaratory relief as well as punitive damages.

Defendants filed a Motion to Dismiss or for Summary Judgment on June 3, 2004, based upon a failure to state a claim upon which relief can be granted. This Magistrate Judge recommended on October 26, 2004, that Defendants' motion be granted in its entirety (Docket #31).  On March 31, 2005, the Court issued a partial judgment on Defendants' Motion for Summary Judgment.  The Court dismissed Plaintiff's claims against Defendants Hofbauer and Nomellini with prejudice, and further ordered that all personal mail claims against Defendants Caruso, Birkett, Lockwood, McNamara, Willliamson, Forshee, Berry and Brethauer be dismissed as well.  The Court also dismissed Plaintiff's claims as to legal mail received prior to September 18, 2003, from courts and the Judicial Tenure Commission.

The case was allowed to proceed, however, on the issues of whether the remaining Defendants improperly interfered with Plaintiff's legal mail sent to him by his attorney, and by the courts and Judicial Tenure Commission after September 18, 2003.  The Court also allowed claims concerning the interference with legal mail from the Prison Legal Services of Michigan and the Attorney General's Office to proceed, but provided that there be a period of discovery to ascertain the facts surrounding any interference with such mail.

This cause was referred back to the Magistrate Judge on January 26, 2007, for a determination on all pretrial matters, and for a Report and Recommendation on any dispositive motions relating to the remaining issues. Plaintiff filed a Motion to file a Revised First Amended Complaint, along with a proposed Amended Complaint, on November 29, 2006, incorporating the permitted issues, and seeking to add a party defendant (Docket

#69). The motion seeking to file an Amended Complaint was granted, and the Clerk was ordered to mail Plaintiff copies of the Amended Complaint with summons so that he could effectuate service on the new Defendant.

Defendants filed a Renewed Motion for Summary Judgment on December 4, 2006, based upon a failure to state a claim upon which relief can be granted. Defendants argued that Plaintiff had failed to establish a constitutional violation and that, even if he had, they were protected from suit by qualified immunity. In a response to Defendants' Renewed Motion for Summary Judgment, dated January 3, 2007, Plaintiff argued to the contrary. Defendant Niernberg, the new Defendant added by the Amended Complaint, filed a motion and brief on February 26, 2007, seeking to join his co-defendants in their Motion for Summary Judgment (Docket #82).

STANDARD OF REVIEW

When considering a Rule 12(b)(6) motion to dismiss, the trial court must accept all the allegations in the complaint as true and construe the complaint liberally in favor of the plaintiff. FED. R. CIV. P. 12(b)(6); see Miller v. Currie, 50 F.3d 373, 377 (6th Cir. 1995). "Dismissal of a complaint for the failure to state a claim upon which relief may be granted is appropriate only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Brown v. Bargery, 207 F.3d 863, 867 (6th Cir. 1997).

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party has the burden of

showing an absence of evidence to support the non-moving party's case. Covington v. Knox County Sch. Sys., 205 F.3d 912, 914 (6th Cir. 2000). Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. Id. A mere scintilla of evidence is insufficient to defeat a supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). While the evidence itself need not be the sort admissible at trial, the evidence must be more than the non-movant's own pleadings and affidavits. Ashbook v. Block, 917 F.2d 918, 921 (6th Cir. 1990); see also Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989) (explaining that the non-moving party may not rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact).

## INTERFERENCE WITH INCOMING MAIL

A prisoner's right to receive mail is protected by the First Amendment, but prison officials may impose restrictions that are reasonably related to security or other legitimate penological objectives. See Knop v. Johnson, 977 F.2d 996, 1012 (6th Cir. 1992). As the Sixth Circuit has noted, "prison officials may open prisoners' incoming mail pursuant to a uniform and evenly applied policy with an eye to maintaining prison security." Lavado v. Keohane, 992 F.2d 601, 607 (6th Cir. 1993). However, prison officials who open and read incoming mail in an arbitrary and capricious fashion violate a prisoner's First Amendment rights. See Parrish v. Johnson, 800 F.2d 600, 604 (6th Cir. 1986).

Courts have heightened concerns with allowing prison officials unfettered discretion to open and read an inmate's "legal mail". A prison's security needs do not automatically

4

trump a prisoner's First Amendment right to receive mail, especially correspondence that impacts upon or has import for the prisoner's legal rights, the attorney-client privilege, or the right of access to the courts. See Kensu v. Haigh, 87 F.3d 172, 174 (6th Cir. 1996) ("The right of a prisoner to receive materials of a legal nature, which have impact upon or import with respect to that prisoner's legal rights and/or matters, is a basic right recognized and afforded protection by the courts ...."); see also Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003) ("In balancing the competing interests implicated in restrictions on prison mail, courts have consistently afforded greater protection to legal mail than to non-legal mail....").

In an attempt to accommodate both the prison's needs and the prisoner's rights, courts have approved prison policies that allow prison officials to open "legal mail" and inspect it for contraband in the presence of the prisoner. See, e.g., Wolff v. McDonnell, 418 U.S. 539, 577 (1974) (upholding such a policy against a Sixth Amendment attorney-client privilege claim and a Fourteenth Amendment due process claim based on access to the courts). In Knop, the Sixth Circuit addressed an opt-in system in which prison officials could open any mail sent to a prisoner unless the prisoner affirmatively requested that "privileged mail," defined by the policy as mail sent by a court or by counsel, be opened in his presence. Knop v. Johnson, 977 F.2d at 1012. The court found that the opt-in system was constitutionally sound as long as prisoners received written notice of the policy, did not have to renew the request upon transfer to another facility, and were not required to designate particular attorneys as their counsel. Id.

However, not all mail that a prisoner receives from a legal source will implicate constitutionally protected legal mail rights. In Sallier v. Brooks, 343 F.3d 868 (6th Cir. 2003), the court found that mail from legal sources having little or nothing to do with safeguarding

a prisoner's access to the courts, or protecting an inmate's relationship with an attorney, could be opened outside the presence of a prisoner. The Sallier court specifically ruled, for instance, that mail from county clerks, registrars of deeds or bar associations were not entitled to special handling by prison officials because such correspondence generally did not contain confidential, personal or privileged material. Id. at 876. The Sallier court emphasized that the only mail that qualified as "legal mail," entitling it to First Amendment protection, was correspondence sent by courts or attorneys at law. Id. at 877-878. (We find that the prisoner's interest in unimpaired, confidential communication with an attorney is an integral component of the judicial process and, therefore, that as a matter of law, mail from an attorney implicates a prisoner's protected legal mail rights).

DISCUSSION AND ANALYSIS

Defendants acknowledged that the practice of opening legal mail in a prisoner's presence upon request was suspended after the September 11, 2001, terrorist attacks. A new rule was then enacted, effective May 2, 2002, that allowed MDOC personnel to open a prisoner's legal mail outside his presence. According to Defendants, the new policy did not permit prison officials to read or skim the contents of legal mail, but only countenanced a search for contraband[1] (See Exhibit 1, ¶¶ 4-5, attached to Defendants' Renewed Motion for Summary Judgment).

Plaintiff's legal mail was opened in October 2003, by Defendants Berry and Niernberg. According to attached affidavits, Berry and Niernberg opened Plaintiff's legal

---

[1] In June 2005, the policy concerning the handling of legal mail was changed again to require prison officials to open such mail in the presence of prisoners who request special handling (See Exhibit 1, ¶6, attached to Defendants' Renewed Motion for Summary Judgment).

mail in accordance with the applicable policy directive in order to search for contraband and not for the purpose of reading its contents. (See affidavit of Defendant Berry, attached as Exhibit 3 to Defendants' Motion for Summary Judgment; See affidavit of Defendant Niernberg, attached to her Summary Judgment Motion at Docket #82).

PERSONAL INVOLVEMENT

In his First Amended Complaint, Plaintiff seeks compensatory and punitive damages for opening his legal mail outside his presence. In order to state a claim for monetary damages under §1983, however, the Plaintiff must allege some specific, personal wrongdoing on the part of each individual defendant, and theories of vicarious liability or respondeat superior are not sufficient. Rizzo v. Goode, 423 U.S. 362, 376 (1976); Poe v. Haydon, 853 F.2d 418, 429 (6th Cir. 1988), cert. denied, 488 U.S. 1007 (1989).

A review of the Amended Complaint reveals that Plaintiff has failed to establish that Defendants Caruso (MDOC Director), Birkett (Warden), Lockwood (Inspector), McNamara (STG Coordinator), Willliamson (Mailroom Supervisor), Forshee (Mailroom Supervisor) and Brethauer (Mailroom Clerk) had any direct, personal involvement with the opening of his legal mail. There is no allegation that any of these defendants personally opened Plaintiff's mail, or that they actively encouraged anyone else to do so. To the extent Plaintiff complains about a failure to respond to his grievances[2], the general rule is that a combination of knowledge of a prisoner's grievances and failure to respond to or remedy the complaints is insufficient to impose liability upon supervisory personnel under § 1983.

---

[2]In his reply to Defendants' Renewed Motion for Summary Judgment, Plaintiff claims that Caruso, Birkett and Forshee should be held liable because they were supervisors and involved in the grievance appeal process (See p. 3 of Plaintiff's Opposition to Defendants' Refiled Motion for Summary Judgment at Docket #76)

7

Hays v. Jefferson County, 668 F.2d 869, 874 (6th Cir. 1982), cert. denied, 459 U.S. 833 (1982).

Defendants Caruso, Birkett, Lockwood, McNamara, Willliamson, Forshee and Brethauer were merely part of the prison administration during the relevant time, and there is no evidence that any "policy" personally promulgated by them had anything to do with Plaintiff's treatment. Moreover, Plaintiff has not shown that these Defendants had "actual knowledge of a breakdown in the proper workings of the department." See Hill v. Marshall, 962 F.2d 1209, 1213 (6th Cir. 1992). Absent a showing that they were personally or directly involved, these defendant should not be held liable for compensatory damages. Accordingly, the monetary claim against them should be dismissed regardless of the constitutional sufficiency of Plaintiff's actual treatment.

QUALIFIED IMMUNITY

Although Defendants Berry and Niernberg had personal involvement in opening Plaintiff's legal mail, they are entitled to qualified immunity. The Supreme Court has set forth a two prong test for analyzing qualified immunity. First, a court must determine whether a constitutional right has been violated. Second, the court must consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

The Sixth Circuit has recently added another facet to the question of whether a prison official is entitled to qualified immunity. In Barnes v. Wright, 449 F.3d 709 (6th Cir. 2006) the court held that there must also be a determination of whether the Plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional right. Id. at 715.

While Plaintiff has established that a constitutional violation occurred when his legal mail was opened outside his presence by Defendants Berry and Niernberg, he has failed to demonstrate that their conduct was objectively unreasonable in light of heightened security concerns following the terrorist attacks and anthrax mail threats. Given such security concerns, it was not objectively unreasonable for these defendants to follow established prison policy that required them to open all legal mail in one location, rather than in the presence of each prisoner, in order to search for contraband or other threats. Defendants Berry and Niernberg would certainly have faced severe consequences, including discipline, if they had not followed policy directives concerning prison security. Individual claims of immunity must be analyzed on a fact-specific, case by case basis, O'Brien v. City of Grand Rapids, 23 F.3d 990, 999 (6th Cir. 1994). Defendants Berry and Niernberg are entitled to qualified immunity. They were carrying out an established agency policy promulgated in an effort to achieve legitimate penological objectives. To preserve Plaintiff's right of access to the courts and his relationship with his counsel, the Defendants did not read Plaintiff's legal mail. While their conduct may arguably have failed to meet constitutional requirements, I am satisfied that it was not objectively unreasonable under the facts of this case. The questionable policy of opening prisoner's legal mail outside their presence was short lived and is now superceded by a procedure consistent with controlling judicial decisions.

MENTAL ANGUISH

Plaintiff seeks compensatory and punitive damages "to compensate [him] for undue and unnecessary mental and emotional aggravation resulting from Defendants'

9

unconstitutional conduct." (Amended Complaint ¶¶ 39-41). This category of damages, however, is barred under § 1983 without a prior showing of physical injury.

The Prison Litigation Reform Act specifically prohibits monetary damages solely for emotional distress.

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility for mental or emotional injury suffered while in custody without a showing of physical injury.
>
> 42 U.S.C. § 1997e(e)

The Complaint alleges only emotional injuries stemming from the defendants' alleged misconduct. Since Plaintiff has not alleged any physical injuries, his claim for monetary damages is barred by § 1997e(e).

Having neither suffered nor alleged a remediable harm, Plaintiff has failed to allege a compensable constitutional violation. Accordingly, the undersigned is persuaded that the Defendants' Renewed Motion to Dismiss or for Summary Judgment should be granted and the instant Complaint dismissed. Given this recommendation, Defendant Niernberg's Motion to Join her Co-Defendants' Motion for Summary Judgment (Docket #82) should be granted.

The parties are advised that any objections to this Report and Recommendation must be filed with the Court within ten (10) days after they are served with a copy, or further appeal from Judge Hood's acceptance thereof is waived.

s/Donald A. Scheer  
DONALD A. SCHEER  
UNITED STATES MAGISTRATE JUDGE

DATED: May 31, 2007

## CERTIFICATE OF SERVICE

I hereby certify on May 31, 2007 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on May 31, 2007. **Bahaa S. Kalasho.**

s/Michael E. Lang
Deputy Clerk to
Magistrate Judge Donald A. Scheer
(313) 234-5217